UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCOIS P. GIVENS, | No. C 06-2505 MHP (pr) |
| Plaintiff, | **ORDER OF SERVICE** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO; et al., | |
| Defendants. | |

## INTRODUCTION

Francois P. Givens, formerly a prisoner of the State of California and now living in Las Vegas, Nevada, filed this civil rights action. His first amended complaint is now before the court for screening pursuant to 28 U.S.C. § 1915A.

## BACKGROUND

Givens "was convicted of attempted voluntary manslaughter, infliction of corporal injury on a former cohabitant resulting in a traumatic condition, and assault with a deadly weapon" as a result of an incident on October 5, 2001 in which he "stabbed his estranged girlfriend in the course of a heated discussion." People v. Givens, 2006 WL 187713, *1 (Cal. Ct. App. 2006). San Francisco police officers apprehended Givens near the scene shortly after the stabbing. The first amended complaint concerns his treatment after his arrest.

The first amended complaint alleges the following: On October 5, 2001, San Francisco Police Department officers Merino (badge # 257) and Gratz (badge # 1661)

transported Givens to the police station after arresting him. "Once out of the police car, the officers roughly pulled Givens to a wooden bench where they placed a single pair of handcuffs on the over 300 pound suspect. Givens, who suffers from diabetes and hypertension and was sweating profusely while hyperventilating, immediately yelled as one of the officers slammed a handcuff on his right hand." FAC, p. 3. Givens screamed in pain for about an hour and begged the officers to loosen the handcuffs, but they refused. Givens also contends that officers Merino and Gratz discriminated against him under the Americans With Disabilities Act ("ADA") "by failing to allow proper medical treatment to be administered and or cutting off blood circulation in the diabetic Plaintiff's right hand for an extended period of time." Id. at 11. After going to the county jail Givens was "initially refused treatment" by an unidentified person who said he would need a court order for an x-ray since he complained that an officer had caused the injury. Id. Givens does not allege what happened thereafter with regard to any medical care request for the hands/wrists.

The first amended complaint also alleges that, in March 2003, Givens filed a citizen's complaint about the incident with the San Francisco Office of Citizens' Complaints ("OCC"). He filled out medical release forms in November 2003 for OCC investigator Karol Heppe. He alleges that there is "no evidence" that Heppe "ever investigated Givens' medical condition." Id. at 4. Heppe and the OCC didn't respond to his requests for copies of his complaints, minutes or tapes of sessions of any hearings related to the matter. As of the date of filing the first amended complaint, he had not received notice of the disposition of his citizen's complaint. Id. at 5.

Givens alleges several claims based on the allegedly inadequate investigation that took place after he submitted his citizen's complaint in 2003. Defendant Heppe allegedly failed to properly investigate his injuries and claim of misconduct. Defendant OCC failed to properly supervise and train Heppe, failed to ensure that Givens' OCC complaint was properly investigated and processed, and promulgated an unconstitutional policy/custom that

1 allowed OCC inadequacies. Defendant San Francisco Police Commission promulgated an
2 unconstitutional policy/custom that impeded investigation of citizen's complaints and takes
3 into account political motivations. Defendant former San Francisco Mayor Willie Brown
4 promulgated an unconstitutional policy/custom to impede investigation of complaints.
5 Defendant former San Francisco Police chief Sanders failed to bring charges of police
6 misconduct to the police commission, and failed to properly train, supervise and discipline
7 defendants Merino and Gratz who used excessive force on Givens. Id. at 6-7.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. §1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §1915A(b)(1),(2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

An allegation of the use of excessive force by a law enforcement officer in effectuating an arrest states a valid claim under 42 U.S.C. § 1983. See Rutherford v. City of Berkeley, 780 F.2d 1444, 1447 (9th Cir. 1986), overruled on other grounds by Graham v. Connor, 490 U.S. 386 (1989). The Fourth Amendment reasonableness analysis applies to any arrest situation where force is used, whether it involves physical restraint, use of a baton, use of a gun, or use of a dog. See, e.g., Mendoza v. Block, 27 F.3d 1357, 1362 (9th Cir. 1994) (deputies' use of police dog to find suspect and secure him until handcuffed analyzed under reasonableness standard). The Fourth Amendment reasonableness standard also

3

applies to allegations of the use of excessive force against an arrestee and the conditions of confinement while detained in custody post-arrest but pre-arraignment. See Pierce v. Multnomah County, Oregon, 76 F.3d 1032, 1043 (9th Cir. 1996). Liberally construed, the first amended complaint states a cognizable § 1983 claim for the use of excessive force by defendants Merino and Gratz, for their actions in handcuffing Givens too tightly. Liberally construed, the first amended complaint also states a Fourth Amendment claim against Merino and Gratz for their alleged failure to get proper medical treatment for Givens.

Although Givens also alleges that the incident violated the ADA, the tight handcuffing and medical care claim allegations do not state a claim for an ADA violation against the individual arresting officers because neither of them is an appropriate defendant under the ADA. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see 42 U.S.C. § 12131(1)(A) & (B) (public entity" includes any state or local government or any department, agency, special purpose district or other instrumentality of a state or states or local government).

Givens' allegations against the OCC and investigator Hebbe do not state a claim under § 1983. Givens alleges that the OCC and Hebbe failed to adequately investigate the use-of-force event that had occurred more than a year before he filed his OCC complaint in March 2003. He does not allege that the OCC and Hebbe's conduct caused the use of force that had occurred in October 2001. The claim Givens appears to be asserting is that he has a federally protected interest in having a citizen's complaint about police misconduct investigated. He did not have a federally protected liberty or property interest in having a police commission investigate his claim of police misconduct, as there is no alleged impact on him – other than perhaps emotional satisfaction – that would result if the OCC found in his favor and recommended disciplinary proceedings be pursued against the officers. Cf. Town of Castle

4

1 Rock, Colorado v. Gonzales, 545 U.S. 748, 766-68 (2005) ("the benefit that a third party may
2 receive from having someone else arrested for a crime does not trigger protections under the
3 Due Process Clause, neither in its procedural, nor in its 'substantive' manifestations"); Linda
4 R. S. v. Richard D. 410 U.S. 614, 617 (1973) (mother lacked a judicially cognizable interest
5 in having her child's father prosecuted for nonpayment of child support because, although
6 mother had an interest her child's support, her suit to enforce application of child support
7 laws would not result in support payments but only in the father's incarceration) id. ("federal
8 plaintiffs must allege some threatened or actual injury resulting from the putatively illegal
9 action before a federal court may assume jurisdiction").  The alleged failure of Hebbe and the
10 OCC to investigate his complaint did not deprive him of a right under the Constitution or
11 laws of the United States.  Because there was no such deprivation, the alleged municipal
12 policy/practice that allowed the inadequate investigation also does not support a § 1983
13 claim.
14      Plaintiff's allegations against municipal defendants pertain to the OCC investigation
15 performed more than a year after the use of force; he does not allege that the municipal
16 defendants caused the alleged use of excessive force on him in October 2001.  The
17 municipality has no vicarious liability in a § 1983 action under the theory of respondeat
18 superior, see Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).   And Givens
19 did not allege that there was a municipal policy was the moving force behind the alleged use
20 of force, see Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir.
21 1997), or that the alleged failure to train and supervise was the cause of the alleged use of
22 excessive force.  A further indicator that he was not attempting to allege failure to
23 train/supervise with regard to the excessive force claim is that the individual police chief who
24 he named as a defendant was not the chief of police when the force was used in 2001, but
25 rather was the chief when the OCC allegedly failed to do its investigation.  See
26 http:///www.sf-police.org.  The municipality defendants must be dismissed.

**CONCLUSION**

For the foregoing reasons,

1. The first amended complaint states cognizable § 1983 claims against defendants Merino and Gratz for Fourth Amendment violations for their alleged use of excessive force and failure to get medical care for plaintiff. All other defendants and claims are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, a copy of the amended complaint and all orders in this action upon San Francisco police officer Merino (badge# 257) and San Francisco police officer Gratz (badge # 1661).

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

   a. No later than **June 24, 2011**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, they must so inform the court prior to the date the motion is due.

   b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendant no later than **July 29, 2011**. Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

   > The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
   >
   > Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out

6

> specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. (See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998).

Plaintiff also should take note that defendants may file a motion to dismiss for failure to exhaust administrative remedies instead of or in addition to a motion for summary judgment. A motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, result in the dismissal of the action. The plaintiff must "develop a record" and present it in his opposition in order to dispute any "factual record" presented by the defendants in their motion to dismiss. Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).

       c.     If defendants wish to file a reply brief, they must file and serve the reply brief no later than **August 12, 2011**.

       4.     All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

       5.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

       6.     Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff is cautioned that he

7

must include the case name and case number for this case on any document he submits to this court for consideration in this case.

7. Any document plaintiff sends to the court for filing must be sent in an envelope addressed to the clerk, rather than addressed to the undersigned, so that the materials will reach the court file and be docketed.

IT IS SO ORDERED.

Dated:   April 1, 2011

_____
Marilyn Hall Patel
United States District Judge

8